**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x

| | | |
|---|---|---|
| In re: | : | **Chapter 11** |
| | : | |
| **RIVERROCK NEHEMIAH REALTY LLC,** | : | **Case No. 15-43095 (NHL)** |
| | : | |
| Debtor. | : | |
| | : | |

---------------------------------------------------------------x

**MOTION FOR RELIEF FROM THE AUTOMATIC STAY**
**IN FAVOR OF ECP PROPERTY II LLC OR,**
**IN THE ALTERNATIVE, TO DISMISS BANKRUPTCY CASE**
**WITH PREJUDICE TO DEBTOR'S REFILING WITHIN 180 DAYS**

Movant, ECP Property II LLC ("ECP"), by its attorneys and pursuant to 11 U.S.C. §§ 362 and 1112 and Federal Rules of Bankruptcy Procedure 4001 and 9014, moves for relief from the automatic stay or, in the alternative, to dismiss this bankruptcy case with prejudice to Debtor's filing of another bankruptcy petition within 180 days.  For cause, ECP states:

### JURISDICTION AND VENUE

1.     This Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 1334 and 157, and 11 U.S.C. §§ 362 and 1112.  This is a contested matter under Federal Rules of Bankruptcy Procedure 4001 and 9014, and is a core proceeding.

2.     Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### BACKGROUND

3.     Riverrock Nehemiah Realty LLC ("Debtor") filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code") on July 2, 2015 (the "Petition Date").  Debtor's filing of its voluntary petition represents Debtor's second filing of a voluntary petition for relief under Chapter 11 of Title 11 in this Court within the last ten

months, the first having occurred on October 2, 2014 in the case styled <u>In re Riverrock</u>

<u>Nehemiah Realty LLC</u>, case number 14-45041-NHL (the "2014 Case"), which Debtor also

commenced to stop a foreclosure action involving certain Property defined below.

**<u>The Building Loan</u>**

4.  As evidenced by the declaration of Nathan Cann annexed hereto as Exhibit 1,

prior to the Petition Date, on August 20, 2008, Debtor and Banco Popular North America

("Banco Popular") entered into a Building Loan Agreement (the "Building Loan Agreement")

and related agreements and documents that established a $1,912,341.00 commercial loan (the

"Building Loan") to Debtor and otherwise to reflect certain loan agreements between the parties.

A copy of the Building Loan Agreement is annexed hereto as Exhibit 2.

5.  Debtor and Banco Popular entered into a $1,912,341.00 Building Loan Note

(the "Original Building Loan Note") on August 20, 2008 that evidenced the Building Loan.  A

copy of the Original Building Loan Note is annexed hereto as Exhibit 3.

6.  The Original Building Loan Note included Debtor's promise to make certain

payments to Banco Popular and to perform various other obligations.

7.  Debtor subsequently entered into a Building Loan Note Extension and

Modification Agreement (the "Building Loan Note Modification Agreement") with Banco

Popular on December 8, 2010.   Among other things, the Building Loan Note Modification

Agreement reduced the principal amount of the Original Building Loan Note to $1,887,583.56

and extended the maturity date of the Original Building Loan Note to March 31, 2011.  A

copy of the Building Loan Note Modification Agreement is annexed hereto as Exhibit 4.

8.  Together, the Original Building Loan Note and the Building Loan Note

Modification Agreement are referred to as the "Building Loan Note."

9.      The Building Loan Note is secured by a Building Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated August 20, 2008 (the "Building Loan Mortgage") executed by Debtor in favor of Banco Popular, granting a lien and security interest in the real property and improvements known as 774 Rockaway Avenue, Brooklyn, New York, Block 3602, Lot 1002 (collectively, the "Property").  A copy of the Building Loan Mortgage is annexed hereto as Exhibit 5.

**The Project Loan**

10.      Also on August 20, 2008, Debtor and Banco Popular entered into a Project Loan Agreement (the "Project Loan Agreement") and related agreements and documents that established a $349,669.00 commercial loan (the "Project Loan") to Debtor and otherwise to reflect certain loan agreements between the parties.  A copy of the Project Loan Agreement is annexed hereto as Exhibit 6.

11.      Debtor and Banco Popular entered into a $349,669.00 Project Loan Note (the "Original Project Loan Note") on August 20, 2008 that evidenced the Project Loan.  A copy of the Original Project Loan Note is annexed hereto as Exhibit 7.

12.      The Original Project Loan Note included Debtor's promise to make certain payments to Banco Popular and to perform various other obligations.

13.      Debtor subsequently entered into a Project Loan Note Extension and Modification Agreement (the "Project Loan Note Modification Agreement") with Banco Popular on December 8, 2010.  Among other things, the Project Loan Note Modification Agreement reduced the principal amount of the Original Project Loan Note to $97,327.83 and extended the maturity date of the Original Project Loan Note to March 31, 2011.  A copy of the Project Loan Note Modification Agreement is annexed hereto as Exhibit 8.

14.    Together, the Original Project Loan Note and the Project Loan Note Modification Agreement are referred to as the "Project Loan Note."

15.    The Project Loan Note is secured by a Project Loan Mortgage, Assignment of Leases and Rents and Security Agreement dated August 20, 2008 (the "Project Loan Mortgage") executed by Debtor in favor of Banco Popular, granting a lien and security interest in the Property, chattels, intangibles, rents, revenues, income and other benefits of the Property, and all proceeds of any of the foregoing.  A copy of the Project Loan Mortgage is annexed hereto as Exhibit 9.

16.    Banco Popular evidenced its interest in the Property, chattels, intangibles, rents, revenues, income and other benefits of the Property, and all proceeds of any of the foregoing by filing a financing statement with the New York State Secretary of State, which the Secretary of State recorded on October 10, 2008 as filing number 200810100693968.  Banco Popular filed a continuation statement with the New York State Secretary of State, which the Secretary of State recorded on May 10, 2013 as filing number 201305105507770.  Copies of the financing statement and the continuation statement are annexed hereto collectively as Exhibit 10.

17.    Also on August 20, 2008, Debtor executed an Assignment of Leases and Rents (the "Assignment of Leases and Rents") in favor of Banco Popular, and executed an Assignment of Contracts (the "Assignment of Contracts") in favor of Banco Popular.  Copies of these documents are annexed hereto collectively as Exhibit 11.

18.    Together, the Building Loan Agreement and the Project Loan Agreement are referred to as the "Loan Agreements."

19.    Together, the Building Loan Note and the Project Loan Note are referred to as the "Notes."

20.     Together, the Building Loan Mortgage and the Project Loan Mortgage are referred to as the "Mortgages."

21.     Collectively, the Loan Agreements, the Notes, the Mortgages, the Assignment of Leases and Rents, the Assignment of Contracts and all other related documents, instruments and agreements evidencing Debtor's obligations and indebtedness to Banco Popular are referred to as the "Loan Documents."

**Defaults, Acceleration, and Commencement of Foreclosure Proceedings**

22.     The Notes matured on March 31, 2011 (the "Maturity Date").

23.     Debtor defaulted on its obligations to Banco Popular under the Notes and the Loan Agreements by, among other things, failing to pay Banco Popular all amounts due under the Loan Documents on the Maturity Date. Debtor made no payments on the Notes subsequent to the Maturity Date.

24.     Banco Popular, through its counsel, notified Debtor of Debtor's default and made demand upon Debtor for payment. Despite demand, Debtor failed and refused to make payment of its outstanding obligations to Banco Popular.

25.     Due to Debtor's defaults, and as permitted by the Loan Documents, Banco Popular commenced proceedings in the Supreme Court of the State of New York, County of Kings (the "Supreme Court"), in the action then styled Banco Popular North America v. Riverrock Nehemiah Realty LLC, et al., Index No. 3763/12 (the "Foreclosure Action"), to foreclose upon the Property.

26.     On July 17, 2014, the Supreme Court entered a *Judgment of Foreclosure and Sale* (the "Judgment of Foreclosure") in the Foreclosure Action, directing that the Property be

sold at public auction and appointing Richard L. Herzfeld, Esquire, as Referee for that purpose.

A copy of the Judgment of Foreclosure is annexed hereto as Exhibit 12.

27.     Referee Herzfeld scheduled the public sale of the Property for October 2, 2014 (the "Original Sale Date").  Copies of the notices of sale filed in the Foreclosure Action are annexed hereto collectively as Exhibit 13.

**Banco Popular's Assignment of the Loan Documents to ECP**

28.     By a Loan Purchase and Sale Agreement dated September 3, 2014, Banco Popular assigned to ECP all of Banco Popular's right, title, and interest in and to the Loan Documents and all amounts due thereunder.

29.     Copies of the Allonges to the Building Loan Note and the Project Loan Note are annexed hereto collectively as Exhibit 14.

30.     ECP recorded in the New York City Department of Finance, Office of the City Register, an Assignment of Building Loan First Mortgage, Assignment of Leases and Rents and Security Agreement dated September 22, 2014 and an Assignment of Project Loan Mortgage dated September 22, 2014, assigning the Building Loan Mortgage and the Project Loan Mortgage from Banco Popular to ECP.  The City Register recorded these instruments as document numbers 20141000300460001 and 20141000300439001, respectively.  Copies of these recorded instruments are annexed hereto collectively as Exhibit 15.

31.     ECP recorded in the New York City Department of Finance, Office of the City Register, an Assignment of Assignment of Leases and Rents dated September 22, 2014, assigning the Assignment of Leases and Rents from Banco Popular to ECP.  The City Register recorded the instrument as document number 2014100300379001.  A copy of the recorded instrument is annexed hereto as Exhibit 16.

32.     ECP recorded with the New York Secretary of State and with the New York City Department of Finance, Office of the City Register, financing statement amendments listing ECP as secured party.  The Secretary of State recorded the instruments as document numbers 201410238421579 and 201410238421581, and the City Register recorded the instrument as document number 2014102400685001.  Copies of these recorded instruments are annexed hereto collectively as Exhibit 17.

**Debtor's 2014 Bankruptcy Petition and Stay of the Sale**

33.     Debtor commenced the 2014 Case by filing a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on October 2, 2014.  Debtor's filing of its voluntary petition resulted in the postponement of the sale of the Property on the Original Sale Date.

34.     On March 14, 2015, the Court in the 2014 Case entered an *Order Granting Relief from the Automatic Stay in Favor of ECP Property II LLC* [Doc. 30], terminating the automatic stay of 11 U.S.C. § 362(a) as to ECP with respect to the Property and permitting ECP to resume the foreclosure proceedings in the Foreclosure Action.

35.     Debtor made no effort to prosecute its Chapter 11 case in the 2014 Case and never filed a plan of reorganization.  Less than two months after the Court's entry of the *Order Granting Relief from the Automatic Stay in Favor of ECP Property II LLC* [Doc. 30], William K. Harrington, United States Trustee for Region 2, moved to dismiss the 2014 Case [Doc. 31] due to Debtor's inability to fund a plan of reorganization, failure to timely file monthly operating reports, and failure to pay its quarterly fees to the Office of the United States Trustee. Following a hearing on the motion, the Court entered an *Order Dismissing Case* [Doc. 33] on May 4, 2015.

36.     In the interim, ECP proceeded to reschedule the sale of the Property in the Foreclosure Action.  Although ECP desired to schedule the sale for an earlier date, at Referee Herzfeld's request ECP scheduled the sale of the Property for July 2, 2015 at 2:30 p.m. at the Supreme Court, and issued the appropriate notices of the sale.

37.     On the afternoon of July 1, 2015, Debtor's counsel contacted ECP's counsel by e-mail regarding the next day's sale in the Foreclosure Action.  According to Debtor's counsel, Debtor retained her to file an *Order to Show Cause* extending the time for Debtor to pay the judgment amount set forth in the Judgment of Foreclosure and to stay the sale.  Copies of the relevant portion of the e-mail correspondence between Debtor's counsel and ECP's counsel and a July 1, 2015 letter from Debtor's counsel to ECP's counsel on the subject are annexed hereto collectively as Exhibit 18.

38.     The Supreme Court was unable to hear Debtor's request for an Order to Show Cause on July 1.  Accordingly, Debtor's counsel advised ECP's counsel that she intended to present the *Order to Show Cause* for signing at the Supreme Court on July 2, 2015 at 9:30 a.m. -- the morning of the sale.  A copy of a July 1, 2015 letter from Debtor's counsel to ECP's counsel concerning the *Order to Show Cause* is annexed hereto as Exhibit 19.

39.     Approximately one hour before the sale on July 2, Debtor's counsel e-mailed ECP's counsel to advise that the Supreme Court declined to enter an *Order to Show Cause* and that Debtor would file a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.  A copy of the relevant portion of the e-mail from Debtor's counsel to ECP's counsel is annexed hereto as Exhibit 20.  Debtor filed its voluntary petition in this case about ten minutes later.

40.     For a second time, Debtor's filing of a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on the Petition Date resulted in the postponement of the foreclosure proceedings involving the Property.

**RELIEF REQUESTED AND BASES THEREFOR**

**Standard for Relief under § 362 of the Bankruptcy Code**

41.     ECP seeks relief from the automatic stay of § 362 of the Bankruptcy Code so that it may resume the foreclosure proceedings involving the Property.

42.     As of the Petition Date, the outstanding balance due to ECP under the Loan Documents totaled $1,927,908.60, plus accrued and unpaid interest, reasonable attorneys' fees, and other costs and expenses incurred by ECP in enforcing its rights under the Loan Documents.

43.     Debtor's *Schedule D* [Doc. 1] values the Property at $1,949.130.00.

44.     Debtor has not made any post-petition payments to ECP.  Indeed, Debtor has not made any payments to ECP since ECP acquired the Loan Documents from Banco Popular in September 2014, and Debtor had not made any payments to Banco Popular since at least March 2011.

45.     The standard for granting relief from the automatic stay in a Chapter 11 proceeding, pursuant to § 362(d) of the Bankruptcy Code is as follows:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; or
>
> (2) with respect to a stay of an act against property under subsection (a) of this section, if--

(A) the debtor does not have an equity in such property; and

(B) Such property is not necessary to an effective reorganization;

* * *

(4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved either –

(A) transfer of all or part ownership of, or other interest in, such real property without the consent of the secured creditor or court approval; or

(B) multiple bankruptcy filings affecting such real property.

The requirements for terminating the automatic stay under § 362(d) are in the disjunctive, such that if the Court finds cause to grant relief from the stay, finds that Debtor has no equity in the property sought to be foreclosed or finds that the filing of the petition was part of a scheme to delay, hinder or defraud creditors, the Court must lift the stay. Cf. In re Diplomat Elec. Corp., 82 B.R. 688, 692 (Bankr. S.D.N.Y. 1988).

**ECP Is Entitled to Relief for Cause**

46.     ECP is entitled to relief for cause, including relief under § 362(d)(3) of the Bankruptcy Code.

47.     Debtor is a "single asset real estate" entity, as that term is defined in the Bankruptcy Code. The Property consists of commercial condominium units and constitutes a single project that generates all or substantially all of Debtor's gross income.

48.    As an initial matter, upon information and belief, Debtor has collected rent from the Property and used ECP's cash collateral without ECP's consent or authority from the Court. The Loan Documents generally, and the Assignment of Leases and Rents specifically, grant ECP a lien on and security interest in, among other things, all rents, revenues, income and other benefits of the Property.  The rents, revenues, income, or proceeds of ECP's collateral held or collected by Debtor represent ECP's cash collateral, and ECP does not consent to Debtor's use of ECP's cash collateral.  Cf. In re South Side House, LLC, 474 B.R. 391, 412 (Bankr. E.D.N.Y. 2012) (rents represented lender's cash collateral pursuant to an assignment of rents and 11 U.S.C. §§ 552(b) and 363(a)).  In the 2014 Case, by e-mail dated November 4, 2014, ECP's counsel advised Debtor's counsel that ECP did not consent to Debtor's use of ECP's cash collateral and invited Debtor's counsel to discuss the matter.  A copy of ECP's counsel's e-mail to Debtor's counsel is annexed hereto as Exhibit 21.  Debtor's counsel never responded to undersigned counsel.

49.    Similarly, in this case, by email dated July 6, 2015, ECP's counsel advised Debtor's counsel that ECP did not consent to Debtor's use of ECP's cash collateral and invited Debtor's counsel to discuss the matter.  A copy of ECP's counsel's e-mail to Debtor's counsel is annexed hereto as Exhibit 22.  Debtor's counsel has not responded to ECP's counsel.

50.    Debtor's use of ECP's cash collateral without ECP's consent or court order constitutes cause for relief from the automatic stay.  See, e.g., 11 U.S.C. § 363; In re Covington, No. 09-04624-HB, 2009 WL 6853048, at * 4 (Bankr. D. S.C. Nov. 20, 2009); In re FCX, Inc., 54 B.R. 833, 838 (Bankr. E.D.N.C. 1985).  ECP otherwise lacks adequate protection of its interest in the Property, given that Debtor has failed to make any post-petition payments to ECP

– either in the 2014 Case or in this case -- under the Loan Documents.  Debtor's continued use of the Property will diminish its value.

**Debtor's Lack of Equity in the Property Is Grounds for Relief under § 362(d)(2)**

51.     Section 362(d)(2) of the Bankruptcy Code authorizes the Court, in a Chapter 11 proceeding, to terminate the automatic stay with respect to Debtor's property if:

> (a)  the debtor does not have an equity in such property; and
>
> (b)  the property is not necessary to an effective reorganization.

See also Pegasus Agency, Inc. v. Grammatikakis (In re Pegasus Agency, Inc.), 101 F.3d 882, 886 (2d Cir. 1996); In re Westchester Ave. Marina Realty, Inc., 124 B.R. 161, 165 (Bankr. S.D.N.Y. 1991).

52.     For purposes of § 362(d), "equity" is the difference between the value of a property and the total of the claims it secures.  See, e.g., Westchester Avenue Marina, 124 B.R. at 165.  Here, Debtor valued the property at $1,949,130.00, while the amount due to ECP was no less than $1,927,908.60 as of the Petition Date.  Additional interest continues to accrue upon the indebtedness.  Accordingly, Debtor does not have any equity in the Property.

**Debtor's Multiple Bankruptcy Filings Are Grounds for Relief under 11 U.S.C. § 362(d)(4)**

53.     Section 362(d)(4) of the Bankruptcy Code authorizes the Court to terminate the automatic stay with respect to Debtor's real property if the Court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved "multiple bankruptcy filings affecting such real property." This provision gives the Court authority to grant *in rem* relief from the stay as to ECP's interest in the Property, such that any and all future

filings by any person or entity with an interest in the Property will not operate as an automatic

stay for a period of two years after the date of the entry of such an order, provided that the order

is recorded in compliance with applicable state laws governing notices of interest or liens in real

property.  11 U.S.C. § 362(d)(4).  See also In re GRL, LLC, 495 B.R. 240, 249 (Bankr.

E.D.N.Y. 2012) (citing In re Montalvo, 416 B.R. 381, 386 (Bankr. E.D.N.Y. 2009)).  A

bankruptcy court may "infer an intent to hinder, delay, and defraud creditors from the fact of

serial filings alone" without holding an evidentiary hearing.  GRL, 495 B.R. at 249 (citing In re

Procel, 467 B.R. 297, 308 (S.D.N.Y. 2012)).

      54.      The extent of the efforts by a debtor to prosecute its bankruptcy case and "[t]he

timing and sequencing of the filings" are important factors in inferring the existence of "a

scheme to delay, hinder, or defraud."  GRL, 495 B.R. at 249 (citing Montalvo, 416 B.R. at 386-

87).  Debtor, with its successive bankruptcy petitions on the eve of the sale of the Property, has

twice prevented ECP from executing upon the Judgment of Foreclosure.  The correspondence

from Debtor's counsel to ECP's counsel indicates that Debtor filed its most recent petition

simply to stay the sale of the Property.  Debtor made no good faith effort to prosecute its

bankruptcy case in the 2014 Case and likely will not prosecute this bankruptcy case.  Debtor

never filed a plan of reorganization in the 2014 Case, and is unlikely to file a confirmable plan

in this case.  See In re Van Eck, 425 B.R. 54 (Bankr. D. Conn. 2010) (describing a debtor's

good faith effort to prosecute a case).  Moreover, Debtor defaulted on the Loan Documents more

than four years ago, and Debtor has made no payments to either Banco Popular or ECP since

that time.  See In re Lemma, 394 B.R. 315, 325 (Bankr. E.D.N.Y. 2008) (weighing the debtor's

attempts to render payments to the secured creditor as a factor militating against a finding of a

scheme to delay, hinder or defraud).

55.     Accordingly, relief under § 362(d)(4) is appropriate, and the Court should enter an order that, if recorded in compliance with the applicable law governing notices of interest of liens in real property, will prevent any future bankruptcy filing affecting the Property from operating as a stay of any action against the Property for a period of two years after the date of entry of such order.  See GRL, 495 B.R. at 249.

**Standard for Relief under § 1112 of the Bankruptcy Code**

56.     Alternatively, Debtor's actions before these proceedings demonstrate that cause exists for the Court to enter an order dismissing this case pursuant to § 1112(b) of the Bankruptcy Code, with prejudice to Debtor's filing of a bankruptcy petition within 180 days. Debtor filed its petition in bad faith and cannot reasonably be expected to reorganize successfully.

57.     Under § 1112(b), with certain inapplicable exceptions, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, for cause[.]"  Section 1112(b)(4) defines "cause" to include, among other things, "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "unauthorized use of cash collateral substantially harmful to 1 or more creditors[.]"  11 U.S.C. § 1112(b)(4)(A), (D).

58.     A bankruptcy court has "wide discretion" to determine whether cause exists, and if cause is present, to decide whether to convert a Chapter 11 case to one under Chapter 7 or to dismiss.  GRL, 495 B.R. at 245 (citing In re BH S & B Holdings, LLC, 439 B.R. 342, 346 (Bankr. S.D.N.Y. 2010)).  The grounds set forth in § 1112(b) for dismissal or conversion are "illustrative, not exhaustive."  GRL, 495 B.R. at 246 (citing C-TC 9th Ave. P'ship v. Norton Co.

(In re C-TC 9th Ave. P'ship), 113 F.3d 1304, 1311 (2d Cir. 1997)).  The Second Circuit Court of Appeals identified the following hallmarks of bad faith in filing a petition:

> (1) the debtor has only one asset;
>
> (2) the debtor has few unsecured creditors whose claims are small in relation to those of the secured creditors;
>
> (3) the debtor's one asset is the subject of a foreclosure action as a result of arrearages or default on the debt;
>
> (4) the debtor's financial condition is, in essence, a two-party dispute between the debtor and secured creditors which can be resolved in the pending state foreclosure action;
>
> (5) the time of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the debtor's secured creditors to enforce their rights;
>
> (6) the debtor has little or no cash flow;
>
> (7) the debtor cannot meet current expenses including the payment of personal property and real estate taxes; and
>
> (8) the debtor has no employees.

C-TC 9th Ave. P'ship, 113 F.3d at 1311 (citation omitted).  Indeed, "it is well established that 'bad faith may serve as a ground for dismissal of a bankruptcy petition.'"  GRL, 495 B.R. at 246 (quoting In re Island Helicopters, Inc., 211 B.R. 453, 461 (Bankr. E.D.N.Y. 1997)).

59.    According to the Second Circuit, "[w]hen it is clear that, from the date of filing, the debtor has no reasonable probability of emerging from the bankruptcy proceedings and no realistic chance of reorganizing, then the chapter 11 petition may be frivolous."  C-TC 9th Ave.

P'ship, 113 F.3d at 110. Debtor's petition is frivolous, and its bad faith filing warrants dismissal of this case.

60.     The C-TC 9th Avenue Partnership factors set forth above clearly demonstrate Debtor's bad faith in filing its most recent petition. Although Debtor's schedules list three secured creditors, ECP holds the largest secured claim by far, and Debtor's petition was a direct response to ECP's enforcement efforts in the Foreclosure Action. No unsecured creditors ever appeared in the 2014 Case. Upon information and belief, Debtor has no employees or cash flow. Cf. Island Helicopters, 211 B.R. at 465 ("Fundamental to any bona fide corporate reorganization under Chapter 11 of the Bankruptcy Code is that the entity seeking relief have assets, liabilities, creditors, employees and business operations."). This case and the 2014 Case represent Debtor's attempts to use the Bankruptcy Code to delay and frustrate ECP's efforts to enforce its rights under the Loan Documents. See GRL, 495 B.R. at 246 (cause for dismissal established by debtor's bad faith); Island Helicopters, 211 B.R. at 456-57 (bankruptcy court will not countenance "a desperate legal stratagem in a two party dispute designed to delay and obstruct" a creditor by a Chapter 11 bankruptcy filing); In re Sydnor, 431 B.R. 584, 592-93 (Bankr. D. Md. 2010) (cause for dismissal established when the debtor's case was a two party dispute, when lenders were the only significant creditors, when the debtor had zero income, and when the debtor's only property was real estate interests).

61.     Debtor filed its petition without a good faith possibility of reorganizing. "A debtor with no current income and whose prospects for future income are 'tentative at best' will have difficulty demonstrating that he has any good faith ability to effectuate a plan of reorganization." In re Lee, 467 B.R. 906, 918 (B.A.P. 6th Cir. 2012). According to Debtor's schedules, Debtor's only asset is the Property, and ECP's claim far outweighs the value of that

asset. Debtor's only potential income sources are the meager rents generated by the Property, which rents constitute ECP's cash collateral. Moreover, the correspondence between counsel for Debtor and ECP plainly indicates that the only purpose of Debtor's filing was to stay the sale of the Property.

62.     Debtor's bad faith filing warrants dismissal of this bankruptcy case. See, e.g., GRL, 495 B.R.at 246. Such dismissal should be with prejudice to Debtor's filing another bankruptcy petition within 180 days.

63.     ECP reserves the right to file additional or supplemental memoranda if, in ECP's opinion, such memoranda will assist the Court in making a determination of the matters raised hereby.

64.     ECP respectfully requests that the 14-day stay of Federal Rule of Bankruptcy Procedure 4001(a)(3) be waived.

WHEREFORE, ECP Property II LLC respectfully requests that this Court enter an Order in one of the forms annexed hereto as Exhibit 23:

A.     Terminating the automatic stay to allow ECP to exercise its rights with respect to the Property under applicable non-bankruptcy law and the terms of the agreements between ECP and Debtor, including providing that, pursuant to 11 U.S.C. § 362(d)(4)(B), if the Order is recorded in compliance with applicable state laws governing notices of interest of liens in real property, any future bankruptcy filing affecting the Property will not operate as a stay of any action against the Property for a period of two years after the date of entry of such Order;

B.     Allowing ECP to file, within thirty (30) days after the disposition of the Property, a proof of claim from which sales price, costs and expenses, net proceeds and deficiency, if any, may be determined;

C.     Dismissing this bankruptcy case, with prejudice to the Debtor's filing of another bankruptcy petition within 180 days; and

D. Granting ECP such other and further relief as is appropriate under the circumstances.

Dated: Baltimore, Maryland
July 7, 2015

**Leitess Friedberg PC**

_____/s/ Gordon S. Young_____
Jeremy S. Friedberg (*pro hac vice* pending)
Gordon S. Young (GY-8331)
10451 Mill Run Circle, Suite 1000
Baltimore, Maryland 21117
jeremy.friedberg@lf-pc.com
gordon.young@lf-pc.com
(410) 581-7400

*Attorneys for ECP Property II LLC*

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------x
In re:                                          :          **Chapter 11**
                                                :
**RIVERROCK NEHEMIAH REALTY LLC,**              :          **Case No. 15-43095 (NHL)**
                                                :
    **Debtor.**             :
                                                :
-----------------------------------------------------------------x

## <u>AFFIDAVIT OF SERVICE</u>

STATE OF MARYLAND            )
                             ) ss:
COUNTY OF BALTIMORE          )

    Gordon S. Young, being duly sworn, says I am not a party to this action, am over eighteen (18) years of age, and reside in Kensington, Maryland.

    On July 7, 2015, I served the within *Motion for Relief from Stay in Favor of ECP Property II LLC or, in the Alternative, to Dismiss Bankruptcy Case with Prejudice to Debtor's Refiling within 180 Days* and supporting papers by (a) Notice of Electronic Filing through the Case Management/Electronic Case Filing to debtor's counsel and the case trustee and all other parties registered to receive electronic notice of filings in this case and (b) first-class mail, postage prepaid, addressed to the following persons:

Narissa A. Joseph, Esquire
277 Broadway, Suite 501
New York, NY 10007

Riverrock Nehemiah Realty LLC
c/o Thema Norton
771 Thomas Boyland Street
Brooklyn, NY 10014

U.S. Trustee
Office of the United States Trustee
Eastern District of NY (Brooklyn Office)
201 Varick Street, Suite 1006
New York, NY 10014

248951

HPD
100 Gold Street, Room 5-Q6
New York, NY10038

New York City Department of Finance
PO Box 680
Newark, NJ 07101

Enterprise Community Asset Management
One Whitehall Street, 11th Floor
New York, NY 10004

ASAP Consulting Corp.
72 Anderson Avenue
North Babylon, NY 11705

Mohammed's General Construction
283 East 8th Street, Unit 2B
Brooklyn, NY 11218

Tribune Maintenance and Restoration Co.
837 Stanley Avenue
Brooklyn, NY 11208

Odinga Bascom Tax Consulting
529 Fifth Avenue
New York, NY 10017

Odinga Bascom Tax Consulting
636 Rockaway Parkway
Brooklyn, NY 11236

Goldstein Hall PLLC
44 Wall Street, 12th Floor
New York, NY 10005

Dated: Baltimore, Maryland
July 7, 2015

_____/s/ Gordon S. Young_____

Jeremy S. Friedberg (*pro hac vice* pending)
Gordon S. Young (GY-8331)
10451 Mill Run Circle, Suite 1000
Baltimore, Maryland 21117
jeremy.friedberg@lf-pc.com
gordon.young@lf-pc.com
(410) 581-7400

*Attorneys for ECP Property II LLC*
